IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

STEPHANIE TAYLOR, §
 §
 Plaintiff, §
 § Civil Action No. 3:18-CV-0338-D
VS. §
 §
METROPOLITAN LIFE §
INSURANCE COMPANY, §
 §
 Defendant. §

MEMORANDUM OPINION
AND ORDER

On cross-motions for summary judgment in this ERISA[1] action, plaintiff Stephanie Taylor ("Stephanie") and defendant Metropolitan Life Insurance Company ("MetLife") disagree on the question whether MetLife wrongly denied Stephanie certain benefits under a portable life insurance policy on her husband's life. For the following reasons, the court grants MetLife's motion for summary judgment, denies Stephanie's motion for summary judgment, and dismisses this action by judgment filed today.

I

Stephanie's late husband, Jonathan H. Taylor ("Jonathan"), was an employee of Cardinal Health, Inc. ("Cardinal Health") who participated in basic and optional life insurance benefits under Cardinal Health's Group Life Insurance Plan (the "Plan"), which

---

[1] Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461.

is governed by ERISA.[2]  Under the terms of the Plan, Jonathan had $136,000 in Basic Employee Life Insurance and $271,000 in Supplemental Employee Life Insurance.

As a result of a disability, the last day Jonathan worked at Cardinal Health was October 20, 2015, and his employment with Cardinal Health ended on or about April 19, 2016.  In accordance with the terms of the Plan, Jonathan's life insurance benefits were to end the date his employment ended.  Under certain circumstances defined in the Plan, a plan participant has the option to port or to convert his life insurance coverage.  Moreover, if the plan participant's employment ends as the result of a disability, he can apply for the continuation of certain insurance.  If the plan participant's claim for continuation is approved, his insurance coverage will be continued under the Plan, and no premium payment will be required.

In March 2016 Jonathan applied for the continuation of certain insurance while totally disabled.  Before MetLife issued a decision on Jonathan's claim for continuation, Jonathan also elected to port his optional life insurance.  According to the Plan and an April 2016 letter, because Jonathan's employment ended due to a reason other than retirement, he had the option of porting—or continuing under another group policy—his optional life

---

[2]Because both sides move for summary judgment, the court will recount the evidence that is undisputed, and, when it is necessary to set out evidence that is contested, will do so favorably to the side who is the summary judgment nonmovant in the context of that evidence.  *See, e.g., GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 718 n.4 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) (Fitzwater, J.)).

insurance.[3]

As a result of Jonathan's choice to port his optional life insurance, MetLife issued a new certificate of insurance for $273,000, effective June 2, 2016 (the "Portable Policy"). Jonathan and Stephanie paid monthly premiums on the Portable Policy from June to September 2016. In September 2016 MetLife informed Jonathan that he met the requirements for total disability under the Plan and that MetLife approved his claim for continuation of, *inter alia*, his basic and optional life insurance, at no cost to him.

Jonathan died in October 2016. The next month, Stephanie submitted a life insurance claim form to MetLife on the Plan and the Portable Policy. MetLife approved and paid Stephanie's claim for benefits under the Plan, but denied her claim under the Portable Policy. Stated in monetary terms, MetLife approved and paid Stephanie's claim for $407,000 in basic and optional life insurance benefits due under the Plan ($136,000 in basic life plus $271,000 in optional life), but denied Stephanie's claim for $273,000 in optional life

---

[3]As the April 2016 letter details, Jonathan also had the option of converting his insurance to a permanent individual life insurance policy. Stephanie's brief in support of her motion for summary judgment states that her husband "accepted" MetLife's offer for "Conversion Life insurance benefits," and that it was the converted benefits that were paid and "are not in dispute." P. Br. 5. As evidence, Stephanie cites a page in the record titled "Notice of Group Life Insurance Conversion Privilege." But the notice expressly states: "[t]his Notice is *not* a conversion application or policy." P. App. 190 (emphasis added). Thus based on this evidence, no reasonable trier of fact could find that Jonathan *converted* his plan to a permanent individual life insurance policy. Instead, the evidence would only permit the reasonable finding that Jonathan applied for a continuation of his insurance, and, while that application was pending, he ported (not converted) his optional life insurance.

insurance benefits under the Portable Policy.[4]  MetLife sent Stephanie a denial letter explaining that "insured person[s] cannot have two benefits stemming from the same insurance coverage," and that she had a right to appeal MetLife's decision.  D. App. 154.

In January 2017 Stephanie's counsel sent an appeal letter to MetLife.  Shortly thereafter, MetLife sent another denial letter, this time including notice that Stephanie's claim is governed by ERISA.  Stephanie, through counsel, submitted an administrative appeal to MetLife in June 2017.  She contended that she was entitled to $273,000 in optional life insurance benefits under the Portable Policy in addition to the benefits that MetLife paid because MetLife sent Jonathan an "Election of Portable Coverage" form, Jonathan completed the form, MetLife issued the Portable Policy to Jonathan with an effective date in June 2016, and Jonathan and Stephanie paid premiums on the Portable Policy through September 2016.

On appeal, MetLife upheld the denial of Stephanie's claim.  Via letter to Stephanie's counsel, MetLife stated that, according to the Plan, "Portable insurance ends when continuation of coverage due to disability is approved."  D. App. 126.  MetLife also stated that "coverage is not a guarantee" and "premium payments are not a guarantee of coverage as premiums can be refunded," which, in this case, MetLife attempted to do.  *Id.*

---

[4]According to MetLife, the difference in optional life insurance coverage from $271,000 to $273,000 was the result of an increase in Jonathan's income from 2015 ($90,018.56 when his Plan benefits were determined) to 2016 ($90,918.75 when he applied for the Portable Policy benefits).  Jonathan's elected optional life benefits were for three times his basic annual income, rounded to the next higher $1,000.  Applying this formula to Jonathan's 2015 and 2016 income accounts for the benefit difference.  Stephanie does not address the discrepancy.

Stephanie filed suit against MetLife in January 2018 in Texas state court, alleging that MetLife had wrongfully denied her claim and appeals. MetLife timely removed the action to this court. Both parties now move for summary judgment on Stephanie's ERISA claim.

II

MetLife is moving for summary judgment on a claim for which Stephanie will have the burden of proof at trial. Because Stephanie will have the burden of proof, MetLife's burden at the summary judgment stage is to point the court to the absence of evidence of any essential element of Stephanie's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once it does so, Stephanie must go beyond her pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in Stephanie's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Stephanie's failure to produce proof as to any essential element of the claim renders all other facts immaterial. *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where Stephanie fails to meet this burden. *Little*, 37 F.3d at 1076.

Because Stephanie will have the burden of proof at trial on her ERISA claim, to be entitled to summary judgment she "must establish 'beyond peradventure all of the essential elements of the claim[.]'" *Bank One, Tex. N.A. v. Prudential Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194

(5th Cir. 1986)). This means that Stephanie must demonstrate that there are no genuine and material fact disputes and that she is entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

Further, in a non-jury case, such as this ERISA action, "a district court has somewhat greater discretion to consider what weight it will accord the evidence." *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010) (quoting *In re Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991)). "When deciding a motion for summary judgment prior to a bench trial, the district court 'has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result.'" *Id.* (quoting *In re Placid Oil Co.*, 932 F.3d at 398).

III

The court turns to the question whether MetLife's denial of Stephanie's claim was proper.

A

MetLife avers that—regardless whether the court applies the *de novo* or the abuse of discretion standard of review—its denial of benefits should be upheld. Stephanie contends that—under either standard—MetLife's denial of benefits should be reversed. The court

agrees that the standard of review is not dispositive of this case because the outcome would be the same under either *de novo* or abuse of discretion review: MetLife properly denied Stephanie's claim to recover death benefits under the Portable Policy.

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Here the Plan grants MetLife discretionary authority to determine eligibility for Plan benefits and to interpret the terms of the Plan, meaning that abuse of discretion is the proper standard of review. The Texas Legislature, however, enacted a statute that renders discretionary clauses unenforceable in several insurance contexts, including life and group life insurance policies, meaning that *de novo* is actually the proper standard of review. *See* Tex. Ins. Code Ann. §§ 1701.62, 1701.002(1)(C) (West 2009 & Supp. 2018). Because the question whether ERISA preempts the Texas antidelegation statute is an open one in the Fifth Circuit,[5] the court will analyze Stephanie's ERISA claim under both standards of review.

*De novo* review would apply if ERISA does not preempt the Texas statute rendering discretionary clauses unenforceable. *See, e.g., Woods v. Riverbend Country Club, Inc.*, 320 F.Supp.3d 901, 909 (S.D. Tex. 2018). Under a *de novo* review of a plan administrator's

---

[5]Although the Fifth Circuit has expressly declined to address this preemption question, in *Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246, 250 n.2 (5th Cir. 2018) (en banc), it acknowledged that "[e]ach court to decide this issue has concluded that ERISA does not preempt state antidelegation statutes."

determination of ERISA benefits, the court reviews the plaintiff's claim "as it would . . . any other contract claim—by looking to the terms of the plan and other manifestations of the parties' intent." *Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 215 F.3d 516, 522 (5th Cir. 2000) (quoting *Bruch*, 489 U.S. at 112). Federal common law governs the construction of ERISA plan provisions. *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 331 (5th Cir. 2014). "Only if the plan terms remain ambiguous after applying ordinary principles of contract interpretation are we compelled to apply the rule of *contra proferentum* and construe the terms strictly in favor of the insured." *Id.* (quoting *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 818 (5th Cir. 1997)).

If ERISA did preempt the Texas antidelegation statute, however, the court would review MetLife's benefits determination under an abuse of discretion standard because the Plan delegates discretionary authority to MetLife. *See Rittinger v. Healthy All. Life Ins. Co.*, ___ F.3d ___, 2019 WL 391771, at *2 (5th Cir. Jan. 31, 2019) (per curiam) ("Where a plan administrator has discretion, as here, we review the administrator's denial of benefits deferentially for abuse of discretion."); *accord Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 226 (5th Cir. 2004). The court follows a two-step analysis when determining whether a plan administrator—here, MetLife—abused its discretion. First, the court determines the legally correct interpretation of the Plan and Portable Policy and whether the administrator's interpretation accords with the proper legal interpretation. *Vercher*, 379 F.3d at 227 (citing *Rhorer v. Raytheon Eng'rs & Constructors, Inc.*, 181 F.3d 634, 639 (5th Cir. 1999)). If the plan administrator's construction is legally sound, then there is no abuse of

discretion. *Id.* (citing *Rhorer*, 181 F.3d at 639-40). Second, if the court concludes that the plan administrator did not give the Plan and Portable Policy the legally correct interpretation, the court determines whether the plan administrator's interpretation constitutes an abuse of discretion. *Id.* at 227-28 (citing *Rhorer*, 181 F.3d at 640).

B

The primary issue in this case is whether Jonathan had separate and distinct coverage under both the Plan and the Portable Policy, such that Stephanie was entitled to recover benefits on both. Stephanie maintains that she is entitled to recover under both because "[t]here was never any notice of cancellation or repudiation [of the Portable Policy] until after [Jonathan's] death," and the other elements of a contract for insurance were met. P. Br. 9-10. MetLife counters that the unambiguous terms of the Plan and Portable Policy prohibit the type of "double recovery" Stephanie seeks. D. Br. 14. After a *de novo* review of the Plan and the Portable Policy, the court concludes that their written terms are not ambiguous and that they plainly prohibit simultaneous recovery.

The Plan provides for the precise scenario in which an insured both applies for a continuation of his insurance coverage due to disability and elects to port his insurance coverage before receiving approval for continuation of insurance:

> If You are Totally Disabled on the date Your employment ends and You elect to Port as provided in this subsection, You may at a later date become approved for the continuation of insurance under the section entitled LIFE INSURANCE: ELIGIBILITY FOR CONTINUATION IF LIFE INSURANCE ENDS WHILE YOU ARE TOTALLY DISABLED. If You are so approved, all Ported insurance continued under this

> Portability subsection will end, including Life Insurance and Dependent Life Insurance.

D. App. 20. The undisputed summary judgment evidence shows that Jonathan was totally disabled on the date his employment ended, that he elected to port his optional life insurance, and that, after porting, he became approved for the continuation of his insurance. Accordingly, all of Jonathan's ported insurance ended as of the date of approval.

Moreover, under the section discussing eligibility for continuation, entitled "EFFECT OF PREVIOUS ELECTION TO PORT COVERAGE," the Plan explicitly states that MetLife "will *not* pay insurance under both this [Plan] and the [ported] policy." D. App. 26 (emphasis added). These terms are not ambiguous. Recovery under both the Plan and another coverage that stems from the Plan is prohibited.

The same result is mandated by the unambiguous terms of the Portable Policy. The Portable Policy provides:

> In the event that: (a) You are disabled; (b) as a result of Your being disabled, You are approved under the Former Plan for continuation of Insurance; and (c) as a result of that approval, premiums are waived under the Former Plan; then the corresponding insurance under this certificate will end on the date You become approved for that continuation of Insurance.

D. App. 49. "Former Plan" is defined as "the policy of group insurance under which You were provided the option of Porting certain insurance provided under such plan." D. App. 45. Because the option of porting arose as a result of the insurance Jonathan had under the Plan, it is the "Former Plan" as the term is used in the Portable Policy. It is evident based on the language in the Portable Policy that it "was intended to provide fallback coverage only

if [Jonathan] was not granted a waiver for his premiums under [the Plan]." *Metro. Life Ins. Co. v. Yitao Sun*, 2013 WL 4759586, at *5 (N.D. Ill. Sept. 4, 2013) (construing similar provision in a MetLife portable policy).

Stephanie fails to demonstrate that there is a genuine issue for trial. She does not contest the validity of the Plan or Portable Policy, argue that their provisions are inapplicable, or cite any evidence that suggests that their provisions are inapplicable. Instead, she contends that "fundamental insurance contract principles" preclude summary judgment in MetLife's favor. P. Resp. Br. 10. In effect, Stephanie is asking the court to consider the fact that she and Jonathan paid premiums on the Portable Policy without regard to the existence of the Plan or the express terms of the Portable Policy. But her contention is unsupportable. The Portable Policy itself acknowledges that it does not exist in isolation. Without the Plan, Jonathan would have had no insurance to port. And without the written terms of the Plan and Portable Policy, there would be no way to know what the coverage was—or to know the parties' intent with respect to that coverage. *Cf.* 29 U.S.C. § 1102(a)(1) ("Every employee benefit plan shall be established and maintained pursuant to a written instrument."). Here, as detailed above, the terms of coverage of both the Plan and the Portable Policy prohibit the double recovery that Stephanie seeks.

Courts confronted with similar contracts and facts agree: double recovery is barred by the express terms of the contracts. *See, e.g., White v. Provident Life & Acc. Ins. Co.*, 114 F.3d 26, 28 (4th Cir. 1997) ("The group policy thus allows an insured to obtain individual conversion coverage as an alternative, but not in addition to, group coverage. The written

terms of this ERISA plan plainly prohibit simultaneous recovery under the group policy and a conversion policy, and ERISA demands adherence to the clear language of this employee benefit plan."); *Colander v. Metro. Life Ins. Co.*, 2017 WL 3816100, at *7 (N.D. Ill. Aug. 31, 2017) (holding that plaintiff sought impermissible double recovery under a portable policy and employer group life insurance plan); *Yitao Sun*, 2013 WL 4759586, at *4-5 (concluding that claims resting on the premise that two policies—one a group life insurance policy and the other a portable policy—"remained in effect until Decedent's death" failed in part because the policies "were specifically designed to prohibit concurrent coverage").

Stephanie's payment of premiums on the Portable Policy does not entitle her to a different outcome.[6] As the Fourth Circuit explained in *White*, mistaken acceptance of premiums does not constitute a knowing waiver of the right to deny a double recovery. *See White*, 114 F.3d at 29. In the instant case, MetLife mistakenly accepted at most a single premium that was billed prior to MetLife's determination of Jonathan's claim for continuation of insurance while disabled. Upon discovering that Stephanie had not surrendered the Portable Policy but that it had ended by its own terms and the terms of the Plan, MetLife attempted to refund the premiums paid by the Jonathan and Stephanie. Neither MetLife's actions nor any other evidence presented indicates that MetLife intentionally relinquished any rights under the Plan or Portable Policy. Thus Stephanie cannot avoid

---

[6]The court notes that Stephanie does not specifically allege "waiver" in her complaint or summary judgment briefing, but because it is possible to read her argument regarding premium payments as one of waiver, the court briefly addresses the applicability of waiver.

summary judgment by pointing to MetLife's acceptance of premium payments on the Portable Policy. *See Sankey v. Metro. Life Ins. Co.*, 2013 WL 1868365, at *7 (E.D. La. May 2, 2013) (holding that waiver doctrine did not apply to mistakenly issued policy where MetLife immediately canceled the policy and returned plaintiff's premium payments).

C

The court would reach the same result under an abuse of discretion standard.

To ascertain whether MetLife abused its discretion in denying Stephanie's claim for benefits, the court first determines the legally correct interpretation of the Plan and Portable Policy and whether MetLife's interpretation accords with the proper legal interpretation. *Vercher*, 379 F.3d at 227 (citing *Rhorer*, 181 F.3d at 639). As explained *supra* § III(B), the Plan and Portable Policy are not ambiguous, and they prohibit simultaneous recovery. MetLife interpreted the Plan and Portable Policy to mean that Stephanie was prohibited from recovering under both the Plan and the Portable Policy. MetLife's interpretation is in accordance with the proper legal interpretation. Because MetLife's construction is legally sound, it did not abuse its discretion. *See id.*

Accordingly, under either *de novo* or abuse of discretion review, MetLife's denial of benefits under the Portable Policy should be upheld.

* * *

For the reasons explained, the court grants MetLife's motion for summary judgment, denies Stephanie's motion for summary judgment, and enters judgment in favor of MetLife dismissing this action with prejudice.

**SO ORDERED**.

February 14, 2019.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE